UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                CRIMINAL ACTION

VERSUS                                  NO: 15-232

MILTON DIAZ                             SECTION: "H"(4)

ORDER AND REASONS

Before the Court is Defendant Milton Diaz's Motion to Suppress (Doc. 52). The Court held an evidentiary hearing in this matter on July 28, 2016. For the following reasons, this Motion is **DENIED**.

BACKGROUND

The Indictment in this matter charges Defendants Milton Diaz and Kim Ricard with violations of the Healthcare Anti-Kickback Statute. The Government alleges that Diaz co-owned and operated Progressive Home Health Care, Inc., ("Progressive") and that Kim Ricard acted as an illegal "patient recruiter" for Progressive. Count 1 charges that the two participated in a conspiracy whereby Richard would refer Medicare beneficiaries to Progressive for home health services. In return, Diaz paid illegal kickbacks and bribes to Richard and others for referring those beneficiaries. Counts 2

1

through 4 charge Ricard with substantive counts of illegal receipt of kickbacks. Counts 5 through 7 charge Diaz with substantive counts of illegal payment of kickbacks.

In this Motion, Diaz seeks (1) suppression of certain statements he made to agents of the Department of Health and Human Services, Office of Inspector General ("HHS-OIG") and (2) suppression of all evidence obtained as a result of a search warrant that relied on those statements as fruit of the poisonous tree.

## LEGAL STANDARD

"It is well established that the burdens of production and persuasion generally rest upon the movant in a suppression hearing."[1] "[I]f a defendant shows that a confession was obtained while he was under custodial interrogation, the government then has the burden of proving that the defendant voluntarily waived his privilege against self-incrimination."[2] Accordingly, Defendant bears the burden of proving that these interrogations were custodial in nature.

## LAW AND ANALYSIS

HHS-OIG agents interviewed Diaz on three occasions: May 25, 2015, August 25, 2015, and September 8, 2015. Potentially incriminating statements were elicited from Diaz during these interviews. The first two interrogations took place in Diaz's office in Gretna, while the third took place at the agents' office in Metairie.[3] Diaz contends that these interrogations were custodial in

---

[1] *United States v. de la Fuente*, 548 F.2d 528, 533 (5th Cir. 1977).
[2] *Id.*
[3] In his original Motion, Diaz contended that all three interrogations took place at his office in Gretna. Plaintiff thereafter amended his affidavit to state that the third

nature, requiring agents to read him his *Miranda*[4] rights prior to questioning. He contends that, with respect to the May 26 interview, the agents "marched in unannounced, cornered Diaz in his own office, and intimidated Diaz into allegedly stating that he knew it was improper for Progressive to use or pay patient recruiters."[5] He states that the agents were positioned between him and the closed door to the office, and that the interview lasted more than an hour. He also contends that he was never informed that he was not under arrest and that he was free to go. He contends that the other two interviews were similarly coercive.

The Government disputes Diaz's version of events. Specifically, the Government contends that, with regard to the May 25 interview, the government agents arrived at Progressive's offices and were greeted by the receptionist, met by Diaz in the entryway, and invited back to his office. They aver that they informed Diaz that he was not under arrest, that the interview was voluntary, that he did not have to answer the questions, and that he was free to leave at any time. They also state that they did not display weapons or body armor during the interview. They further state that, during the course of the interview, other Progressive employees came and went from the room without the officer's direction. They allege that the August 25 interview took place under similar circumstances.

With regard to the September 8 interview, the Government contends that Diaz offered to meet them at HHS-OIG's Metairie office and that it took place in a conference room with an open door. They state that Diaz was not

---

interrogation took place the agents' Metairie office, claiming that the original affidavit contained "minor inaccuracies."

[4] *Miranda v. Arizona,* 384 U.S. 436 (1966).
[5] Doc. 52-1 at 4.

restrained in any way and that he was again advised of the voluntary nature of the interview. This interview lasted approximately one hour.

As the Fifth Circuit recently stated:

> "*Miranda* warnings must be administered prior to 'custodial interrogation.' " *United States v. Bengivenga,* 845 F.2d 593, 595 (5th Cir.1988) (quoting *Miranda v. Arizona,* 384 U.S. 436, 479, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)). "A suspect is ... 'in custody' for *Miranda* purposes when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." *Id.* at 596. "Two discrete inquires are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was at liberty to terminate the interrogation and leave." *J.D.B. v. N. Carolina,* ––– U.S. ––––, 131 S.Ct. 2394, 2402, 180 L.Ed.2d 310 (2011). "The reasonable person through whom we view the situation must be neutral to the environment and to the purposes of the investigation—that is, neither guilty of criminal conduct and thus overly apprehensive nor insensitive to the seriousness of the circumstances." *Bengivenga,* 845 F.2d at 596.
>
> Custody for *Miranda* purposes requires a greater restraint on freedom than seizure under the Fourth Amendment. *Bengivenga,* 845 F.2d at 598 (noting "a Fourth Amendment seizure does not necessarily render a person in custody for purposes of *Miranda*"); *see also Berkemer v. McCarty,* 468 U.S. 420, 437–38, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) (holding *Miranda* warnings not required during traffic stop; finding brevity, spontaneity, and public-nature of stop, and small number of officers involved, rendered atmosphere insufficiently "police dominated" to be coercive). A determination of whether a defendant is "in custody" for *Miranda* purposes depends on the "totality of circumstances." *California v. Beheler,* 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983). "[T]he subjective views harbored by either the interrogating officers or the person being questioned are

4

irrelevant." *J.D.B.,* 131 S.Ct. at 2402 (internal quotation marks omitted).[6]

The Fifth Circuit has indicated that certain factors should be considered in determining whether an interview is custodial: (1) the length of the interview, (2) the location of the interview, (3) the accusatory, or non-accusatory, nature of the questioning, (4) the amount of restraint on the individual's physical movement, and (5) statements made by officers regarding the individuals' ability to leave.[7] The court recognized, however, that no one factor is determinative.[8]

Defendant relies on *United States v. Wittich* to show that the totality of the circumstances renders the interrogations custodial.[9] This case is, however, distinguishable. There, Defendant Rainer Wittich and his business were under investigation for, inter alia, conspiracy, copyright infringement, and money laundering. Defendant Wittich was at home recovering from prostate cancer surgery when FBI agents began a search of his business pursuant to a search warrant. Two agents were dispatched to his home to notify him of the search and inquire if he wished to come to his business and make a statement. When they arrived at his home they were met by his wife who informed them that Wittich was recovering from surgery. She offered to drive Wittich to his business; however, the agents represented that they were required to take him. When he arrived at his business, he found that FBI agents in bullet-proof vests carrying weapons were executing the search. The agents brought Wittich to his office, separated from the other employees who were confined to a conference room. Mrs. Wittich further testified that when she later tried to

---

[6] *United States v. Cavazos*, 668 F.3d 190, 193 (5th Cir. 2012).
[7] *United States v. Wright*, 777 F.3d 769, 775 (5th Cir. 2015).
[8] *Id.*
[9] 63 F. Supp. 33 644 (E.D. La. 2014).

enter the building to deliver her husband's medicine, she was told by agents that she would then be forced to stay for the duration of the search. The government stated that Wittich was informed that he was free to leave.

In finding this interrogation to be custodial, the court focused on the following facts: (1) Wittich had no way to leave the business, as he was brought there by FBI agents, (2) he was recovering from surgery and drowsy due to taking Percocet, further impeding his ability to leave, (3) more than a dozen federal agents in bullet proof vests carrying weapons were conducting the search when Wittich arrived, and (4) Mrs. Wittich's uncontroverted statement that no one would be allowed to leave while the search was being conducted. Conversely, in this matter, Diaz was already at the business when agents arrived. There is no evidence that his cognitive ability was in any way impaired, and there was no testimony offered to show that he was actually prevented from leaving his office. Though in his affidavit he indicated that he was intimidated by the agents, his subjective views are "irrelevant."[10] The agents were in plain clothes and their weapons were not visible. Individuals were allowed to come in and out of the office to speak to Diaz in the course of the interview. Even assuming that Diaz was not advised of the voluntary nature of the interview, this factor alone is insufficient to tip the balance in favor of finding the interview custodial. The Court finds that, in light of the totality of the circumstances, a reasonable person in Diaz's position would have felt free to terminate the encounter. Accordingly, his Motion is denied with respect to the incriminating statements elicited.

Because Defendant has failed to show that the interviews in question were custodial, no *Miranda* violation can be shown and the incriminating statements elicited in the interviews in questions need not be suppressed.

---

[10] *J.D.B.*, 131 S.Ct. at 2402.

6

Accordingly, the Court need not consider Defendant's arguments with regard to suppression of evidence obtained via the warrant obtained in reliance on these incriminating statements, as the fruit of the poisonous tree doctrine is not implicated.

## CONCLUSION

For the foregoing reasons, Defendant Milton Diaz's Motion to Suppress (Doc. 52) is **DENIED**.

New Orleans, Louisiana this 5th day of August, 2016.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**